**F I L E D**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JUL 3 1 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 50071 |
| vs. | ) | Judge Philip G. Reinhard |
| | ) | |
| HALSTON L. CARTER | ) | |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant HALSTON L. CARTER, and his attorney, MARK BYRD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with possessing with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts 1 and 3 of the indictment.    Count One charges defendant with possessing approximately 65.4 grams of cocaine base with the intent to distribute it, in violation of Title 21, United States Code, Section  841(a)(1).   Count Three charges defendant with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1).   In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 and 3 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt and relevant conduct beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

a.      With respect to Count One of the indictment, on October 23, 2007, at Rockford, defendant knowingly and intentionally possessed with the intent to distribute a controlled substance, namely approximately 75.6 grams of mixtures containing cocaine base, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

b.      With respect to Count Three of the indictment on October 23, 2007, at Rockford, defendant, previously having been convicted of a crime punishable by

2

imprisonment for a term exceeding one year, knowingly did possess a firearm and ammunition, namely an Interarms Firestar, model 51-04, .45 caliber semi-automatic handgun, bearing serial number 06364-95 which was loaded with five rounds of .45 caliber ammunition ("Interarms handgun"), which possession was in and affecting commerce in that the firearms had previously been transported in interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

        c.    Specifically, on October 23, 2007 defendant was at a residence located at 2218 Chestnut, Rockford, Illinois ("2218 Chestnut") when Rockford Metro Narcotics Task Force officers executed a search warrant at that residence. The officers first knocked and announced their presence, "Police, search warrant!" After waiting a reasonable amount of time to receive a response and not receiving any answer, the officers used a battering ram to enter the residence. When the officers entered the residence, defendant was in the kitchen. When one of the officers told defendant to get on the floor, defendant ran down the basement stairs and threw a bag containing approximately 42.7 grams of cocaine base on the floor in the basement. Defendant ran into a little room in the basement and was reaching in his pants pocket when an officer apprehended him. After a brief struggle, two officers placed defendant in handcuffs.

        d.    When the officers patted defendant down they located a plastic bag in defendant's left back pants pocket which contained approximately 24.1 grams of cocaine base. Defendant also had $535 in cash in his front pants pockets. The officers also seized

approximately 8.8 grams of cocaine base and an open box of plastic sandwich bags containing cut baggies and baggie corners which belonged to defendant from the kitchen counter. The officers also seized 2 digital scales containing cocaine residue from a kitchen drawer. Defendant admits that the cocaine base set forth in the indictment and herein is "crack" and was prepared by processing cocaine hydrochloride and sodium bicarbonate.

    e.    At the time of his arrest, defendant agreed to allow officers to search two vehicles located at 2218 Chestnut Street, a Chevy Lumina and a Dodge Stratus, which were parked outside of the residence. The officers seized a black camera bag from the trunk of the Chevy Lumina. The camera bag contained 495 grams of cocaine packaged in a plastic bag and the Interarms handgun described in Count Three of the indictment. Officers seized $329 in cash from the center console of the Dodge Stratus. The 495 grams of cocaine, the Interarms handgun and $329 all belonged to defendant. Defendant intended to sell the 75.6 grams of crack cocaine and the 495 grams of cocaine seized from the Chevy Lumina to other individuals.

    f.    The Interarms handgun was manufactured outside the State of Illinois and therefore had traveled in interstate commerce prior to defendant's possession of it on October 23, 2007. Prior to October 23, 2007, defendant was convicted of a crime punishable by a term of imprisonment of more than one year. Specifically, defendant was convicted of distributing between 1 and 15 grams of cocaine on December 22, 2005 in the Circuit Court of Winnebago County, Illinois.

4

## Maximum Statutory Penalties

7.    Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.    Count 1 carries a  maximum sentence of life imprisonment and a statutory mandatory minimum sentence of 10 years. Count 1 also carries a maximum fine of $4,000,000. Defendant further understands that with respect to Count 1 the judge also must impose a term of supervised release of at least five years, and up to any number of years, including life.

b.    Count 3 carries a maximum sentence of 10 years' imprisonment. Count 3 also carries a maximum fine of $250,000.  Defendant further understands that with respect to Count 3, the judge also may impose a term of supervised release of not more than three years.

c.    In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty imposed.

d.    Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is life imprisonment and the minimum sentence is 10 years' imprisonment. In addition, defendant is subject to a total maximum fine of $4,250,000, a period of supervised release of at least five years and special assessments totaling $200.

5

## Sentencing Guidelines Calculations

8.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.   Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

        a.      **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

        b.      **Offense Level Calculations.**

                i.      Pursuant to Guideline §§ 2D1.1(a)(3), 2D1.1(c)(4) and 2D1.1, comment. (N.10(D)), the base offense level for the charge in Count 1 of the indictment is 32 because the offense and relevant conduct involved the equivalent of approximately 1,611 kilograms of marijuana.

                ii.      Pursuant to Guideline §§ 2D1.1(a)(3), 2D1.1(c)(4) and 2D1.1, comment. (N.10(D)(i)), the base offense level is reduced by two levels because the offense charged in Count One and relevant conduct involved cocaine and cocaine base.

iii.    Pursuant to Guideline § 2D1.1(b)(1), the offense level for Count One is increased by 2 levels to level 32 because defendant possessed a firearm.

iv.    Pursuant to Guideline § 2K2.1(a)(2), the base offense level for Count Three is 20 because the defendant committed the instant offense subsequent to sustaining a felony conviction for a controlled substance offense, specifically the conviction described in subparagraph 10(c)(iv).

v.    Pursuant to Guideline § 2K2.1(b)(5), the offense level for Count Three is increased by four levels to level 24 because the defendant possessed the firearm in connection with another felony offense.

vi.    Pursuant to Guideline § 3D1.2(d), Counts One and Three are not grouped together. Pursuant to Guideline § 3D1.4, the combined offense level for Counts One and Three is level 33;

vii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

7

viii.    In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 6 and defendant's criminal history category is III:

i.    On April 3, 2002, in case number 2001 CF 549, in the Circuit Court of Winnebago County, Illinois, defendant was convicted of mob action, a misdemeanor, and was sentenced to 24 months of conditional discharge and 80 hours of public service resulting in the assignment of one criminal history point pursuant to Guideline § 4A1.1(c).

ii.    On May 19, 2003, in case number 2002 CM 6739, in the Circuit Court of Winnebago County, Illinois, defendant was convicted of criminal trespass to land, a misdemeanor, and was sentenced to 12 months of probation and 60 days (suspended) in the

8

Winnebago County Jail resulting in the assignment of no criminal history points pursuant to Guideline §§ 4A1.2(b)(2) and (c)(1).

     iii.  On May 19, 2003, in case number 2002 CM 8249, in the Circuit Court of Winnebago County, Illinois, defendant was convicted of criminal trespass to residence, a misdemeanor, and was sentenced to 12 months of probation and 60 days (suspended) in the Winnebago County Jail resulting in the assignment no criminal history points pursuant to Guideline §§ 4A1.2(b)(2) and (c)(1).

     iv.  On December 22, 2005, in case number 2004 CF 3676, in the Circuit Court of Winnebago County, Illinois, defendant was convicted of delivery of a controlled substance, a felony, and was sentenced to 36 months of probation and 270 days in the Winnebago County Jail resulting in the assignment of two criminal history points pursuant to Guideline § 4A1.1(b).

     v.  Pursuant to Guideline § 4A1.1(d), the defendant receives 2 additional criminal history points, because the instant offense occurred while defendant was under a criminal justice sentence, specifically, the sentence of probation imposed after defendant's incarceration for the conviction referenced in paragraph 9(c)(iv).

     vi.  Pursuant to Guideline 4A1.1(e) the defendant receives 1 additional criminal history point, because the instant offense occurred less than two years after defendant's release from imprisonment for the conviction referenced in paragraph 9(c)(iv) of this Plea Agreement.

9

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 30, which, when combined with the anticipated criminal history category of III, results in an anticipated advisory Sentencing Guidelines range of 121 to 151 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 10 years' imprisonment.

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

      f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the

10

Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

10.     The government is free to recommend whatever sentence it deems appropriate.

11.     The defendant will request that the court exercise its discretion, pursuant to *United States v. Booker*, 125 S.Ct. 738 (2005), to impose a sentence below the applicable Guideline range. The government will oppose defendant's request for a downward variance.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above.  Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.     The government agrees not to file an information against defendant pursuant to Title 21, United States Code, Section 851 seeking enhancement of defendant's sentence on Count One on the basis of a prior conviction for a felony drug offense.

15.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the indictment.

### Forfeiture

16.    The indictment charges that defendant has subjected personal property to forfeiture, namely an Interarms Firestar, model 51-04, .45 caliber semi-automatic handgun, bearing serial number 06364-95 which was loaded with five rounds of .45 caliber ammunition, because that property was used and intended to be used in the commission of the offenses in Counts 1 and 3 of the indictment. By entry of a guilty plea to Counts 1 and 3 of the indictment, defendant acknowledges that the property identified above is subject to forfeiture.

17.    Defendant agrees to the entry of a forfeiture judgment against the property identified above, in that this property is subject to forfeiture. Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in the above-described property. Defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third-party in the event a third party files a claim.

12

18.    Defendant understands that forfeiture of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

### Presentence Investigation Report/Post-Sentence Supervision

19.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

20.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

21.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant

13

further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

22.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 50071.

23.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

14

## Waiver of Rights

24.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree

15

unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

        vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

        b.    **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section

3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

25.      By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

17

## Other Terms

26. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

27. Defendant understands that the government has the right to seek defendant's truthful testimony before a grand jury or a district court.

## Conclusion

28. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

29. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute

18

defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

30.     Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

31.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

32.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _____7-31-08_____

PATRICK J. FITZGERALD
United States Attorney

HALSTON L. CARTER
Defendant

JOSEPH C. PEDERSEN
Assistant U.S. Attorney

MARK BYRD
Attorney for Defendant

19